'07 CIV 7405

JUDGE HOLWELL

Abigail M. Diaz-Pedrosa (AD 0502)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675
Telephone: (212) 446-4688
Facsimile: (212) 446-4900

Attorney for Defendant
NEXXAR GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODGER ZEPKA, ELENO RAMOS,
ENVIOS RD CORPORATION AND
DOMINICAN COMMUNICATIONS
CORPORATION,

            Plaintiffs,

   -against-

NEXXAR GROUP, INC,

            Defendant.

___ CV _____ ( )

NOTICE OF REMOVAL



Pursuant to 28 U.S.C. § 1441, defendant Nexxar Group, Inc. ("Nexxar") files this Notice of Removal and states:

    1.    Nexxar is the defendant in an action commenced against it by the plaintiff pending in the Supreme Court of the State of New York, County of New York, captioned *Zepka et. al. v. Nexxar Group, Inc.*, Index No. 601770/06 (the "Action").

    2.    The action was filed on October 13, 2006. On July 27, 2007, service of an amended complaint was effective upon Nexxar when Nexxar was served with the notice of the state court's order granting the plaintiffs' motion to amend its complaint. *See* N.Y. C.L.P.R. 2103(b)(2); Exhibit A (notice of entry of order). The cause of action that arises under federal law—the sixth cause of action—was added in the amended complaint and was not in the original complaint. Thus, the case, removed based on federal question jurisdiction, first became

removable as of the effective date of the amended complaint.

3.    This Notice of Removal is timely filed as required by 28 U.S.C. § 1446(b). Service upon Nexxar was effective on July 27, 2007, and this Notice is filed within 30 days of service.

4.    Under 28 U.S.C. § 1441, actions subject to removal may be removed to the District Court of the United States for the district and division embracing the place where such action is being removed under 28 U.S.C. § 1332(a).  The United States District Court for the Southern District of New York embraces the place where the Action is pending and venue in this District is therefore proper.

5.    Under 28 U.S.C. § 1338(a), this court has "original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks."  Likewise, under 28 U.S.C. § 1331, this court has jurisdiction over any claim presenting a federal question.  The plaintiffs have brought a cause of action for contributory trademark infringement pursuant to 15 U.S.C. §§ 1114 and 1125.  This case, therefore, arises under federal statutory law governing trademarks, and this court has federal question jurisdiction over this case.

6.    The court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, which provides for supplemental jurisdiction over the remaining claims because those claims derive from a common nucleus of operative facts.  In addition, the court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1441(c), which provides that "whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 . . . is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

7.    In filing this Notice of Removal, Defendant does not waive any defense that may be available to it.

8.    True copies of the Plaintiffs' Complaint and other documents, constituting the entire file in this case, are attached as Exhibit B.

9.     Written notice of filing of this Notice of Removal will be given to Plaintiff, and a true copy will be filed with the Clerk in the Supreme Court of the State of New York for the County of New York, as required by 28 U.S.C. § 1446(d).

### Conclusion

WHEREFORE, Defendant removes this action from the Supreme Court of the State of New York for the County of New York to the United States District Court for the Southern District of New York.

Dated: August 20, 2007

Abigail M. Diaz-Pedrosa (AD 0502)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675
Telephone: (212) 446-4688
Facsimile: (212) 446-4900

Attorney for Defendant
NEXXAR GROUP, INC.

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| RODGER ZEPKA, ELENO RAMOS, ENVIOS RD CORPORATION AND DOMINICAN COMMUNICATIONS CORPORATION, | Index No.: 601770/06 (I.A.S. Part 60) |
| Plaintiffs, -against- | **NOTICE OF ENTRY OF ORDER** |
| NEXXAR GROUP, INC., Defendant. | |

**PLEASE TAKE NOTICE** that the within is a true copy of the Order entered in the office of the clerk of the within named court on the 18th day of July, 2007 in the above captioned acton.

Dated: New York, New York
         July 27, 2007

                                        PORZIO, BROMBERG & NEWMAN, P.C.

                                        By: _____
                                              Gary M. Fellner
                                        *Attorneys for Plaintiff*
                                        156 West 56th Street, Suite 803
                                        New York, New York 10019-3800
                                        (212) 265-6888

To:    Stephen Christopher Bowden, Esq.
       KIRKLAND & ELLIS, LLP
       *Attorneys for Defendant*
       Citigroup Center
       153 East 53rd Street
       New York, New York 10022
       (212) 446-4800

1137977

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 60
------------------------------------------------------------------x
RODGER ZEPKA, ELENO RAMOS, ENVIOS RD
CORPORATION, AND DOMINICAN
COMMUNICATION CORPORATION,

                                Plaintiffs,           Index No.: 601770/06

      - against -

NEXXAR GROUP, INC.,

                                Defendant.
------------------------------------------------------------------x

**APPEARANCES:**

For Plaintiffs:

Porzio, Bromberg & Newman P.C.
156 West 56th Street
New York, New York 10019
(Gary M. Fellner)

For Defendant:

Kirkland & Ellis LLP
153 East 53rd Street
New York, New York 10022
(Abigail M. Diaz-Pedrosa, S. Christoper
Bowden, Mark McKane)

FILED
JUL 18 2007
NEW YORK
COUNTY CLERK'S OFFICE

**FRIED, J.:**

       Motion sequence numbers 002 and 004 are consolidated for disposition.

       This action stems from an alleged agreement between defendant Nexxar Group, Inc. (Nexxar)

and plaintiffs Rodger Zepka, Eleno Ramos, Envios RD Corporation (Envios) and Dominican

Communications Corporation (DCC), that Nexxar would acquire all shares of Envios and DCC

(Acquisition Agreement).

       Plaintiffs move, pursuant to CPLR 3025, for leave to amend the complaint (Complaint) in

the proposed form annexed to their motion papers (Proposed Amended Complaint) (002). In the

Proposed Amended Complaint, plaintiffs seek to assert six causes of action, to wit, breach of

contract, fraudulent concealment, declaratory judgment, injunction, reimbursement of funds, and

contributory trademark infringement. The three new causes of action are for breach of contract, fraudulent concealment and contributory trademark infringement (new causes of action).

Nexxar cross-moves to compel arbitration. Nexxar submits that the new causes of action arise out of an alleged Stock Purchase Agreement, one of a number of agreements executed in connection with the Acquisition Agreement, which includes a mandatory arbitration clause that dictates that all disputes arising under the Stock Purchase Agreement are to be litigated before the American Arbitration Association (AAA) (002).

In addition, Nexxar renews its motion for summary judgment as against plaintiffs seeking an order for payment of $5.5 million dollars allegedly due to Nexxar under a promissory note dated February 18, 2005 (Promissory Note) (004).

For the following reasons, only plaintiffs' motion to amend the Complaint is granted.

On February 18, 2005, Nexxar agreed to purchase all of the outstanding stock of plaintiffs Envios and DCC at a price of $42 million. The Acquisition Agreement consisted of a number of related agreements, which were entered into on the same date. The agreements included: (1) Stock Purchase Agreement; (2) Security Agreement; (3) Guarantee and Pledge Agreement; and (4) Promissory Note.

The Stock Purchase Agreement defines the rights and obligations of each party with respect to the acquisition, including termination. The Promissory Note provides for an advancement of money in the amount of a $5.5 million from Nexxar to plaintiffs in anticipation of the acquisition of Envios and DCC. Pursuant to the terms of the Promissory Note, Envios and DCC promised to pay the principal amount of $5.5 million, as follows:

(a) 120 days after notice by Lender of termination of the Stock Purchase

2

Agreement pursuant to Section 10.1 (e) thereof, if such notice is based on a willful breach by Sellers of any of their representations, covenants or warranties in Section 4 or Section 6 thereof; or

(b) upon termination of the Stock Purchase Agreement pursuant to Section 10.1 (d) thereof; or

(c) provided neither (a) or (b) has occurred, then on the latest to occur of the following -

    (i) May 18, 2006;

    (ii) the first anniversary of the date that Guarantors give notice of termination of the Stock Purchase Agreement pursuant to Section 10.1 (c) thereof;

    (iii) the first anniversary of the date that Lender gives notice of termination of the Stock Purchase Agreement pursuant to Section 10.1 (e) thereof, if such notice is based on a non-willful breach by the Sellers of any of their representations, covenants or warranties in Section 4 thereof; or

    (iv) the first anniversary of the date that Lender gives notice of termination of the stock Purchase Agreement pursuant to Section 10.1 (h) thereof.

    Notwithstanding the foregoing, the principal and interest of this Note shall become payable in full upon an Event of Default as described herein. If no Event of Default shall have occurred . . ., then the outstanding principal balance of this Note shall be forgiven and released and the Note shall be treated . . . as paid in full, upon the Closing as defined in the Stock Purchase Agreement[.]

As such, if the acquisition occurred, the payment obligations under the Promissory Note would be waived and the $5.5 million would have been deducted from the purchase price. However, if the Stock Purchase Agreement was terminated, the date on which payment on the Promissory Note is due varied depending on the grounds for termination of the Stock Purchase Agreement.

The Stock Purchase Agreement's Termination Rights provision, 10.1, specifically provides:

This Agreement may be terminated in writing at any time prior to the Closing date:

(a) by the written consent of Purchaser and Sellers;

(b) by Purchaser or Sellers if the Closing Date shall not have occurred on or before February 10, 2006;

(c) by Sellers if the condition set forth in Section 7.6 (a) [No Material Adverse Effect; Updated Financials] has not been met and Purchaser refuses to close based solely on that condition, . . .;

* * *

(e) by Purchaser in the event of any material breach by either Sellers or the Companies of any of its agreements . . . contained in this Agreement or the Ancillary Agreements and the failure of Sellers or the Companies to cure such breach within fifteen days after receipt of notice from Purchaser requesting that such breach be cured;

(f) by Sellers in the event of any material breach by Purchaser of any of its agreements . . . contained in this Agreement or the Ancillary Agreements and the failure of Purchaser to cure such breach within fifteen days after receipt of Notice from Sellers requesting such breach be cured;

(g) by Purchaser if the $5.5 million dollar promissory note of the Companies to Purchaser or even date herewith for any reason become and payable in full prior to Closing; or

(h) by Purchaser if the conditions in Section 7.14 [Hemisferio Contract] have not been satisfied.

The fact that the Closing has not occurred because any of the conditions set forth in Articles 7 [Conditions Precedent to Obligations of the Purchaser] or 8 [Conditions Precedent to Obligations of Sellers] has not been satisfied shall not in and of itself be deemed a breach of this Agreement.

The rights of termination under this Section 10.1 are in addition to any other rights either Party may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies.

As discussed in detail my prior decision, dated January 8, 2007, Nexxar contends that it

4

refused to close the Acquisition Agreement because plaintiffs failed to satisfy Section 10.1 (h), that is that the terms that plaintiffs agreed to with its agent, Hemisferio, were not satisfactory to Nexxar. Plaintiffs initially claimed that they terminated the Stock Purchase Agreement on February 3, 2006 because Nexxar refused to close on the Stock Purchase Agreement solely because plaintiffs could not satisfy Section 10.1 (c) of the Stock Purchase Agreement by declaring that they had suffered no material adverse effects.

However, on September 19, 2006, Nexxar's former Chief Executive Officer, Frank Angrisani, was deposed. Based on Angrisani's testimony, plaintiffs now claim that it was actually Nexxar who failed to meet its obligations under the Acquisition Agreement, and not plaintiffs. Angrisani averred that, in mid-2005, a subsidiary of Nexxar suffered severe setbacks, which resulted in annual losses to the company of approximately $4 million, and that as a result, Nexxar lost the financial stability to move forward with the Acquisition Agreement.

The Promissory Note specifically refers to the Stock Purchase Agreement with respect to the termination of the agreement; however, nowhere is there any specified default provision triggering repayment of the $5.5 million loan if Nexxar breached the Stock Purchase Agreement as plaintiffs allege (see Promissory Note, ¶ 8).

In addition, as part of the acquisition deal, plaintiffs allegedly permitted Nexxar's use of their trademark "Pronto Envios" (the Trademark) with the understanding that, if the Acquisition Agreement were to fall through, Nexxar's use of the Trademark would discontinue immediately. According to plaintiffs, Nexxar continued to use the Trademark after its expiration.

As to jurisdiction: (a) the Promissory Note provides that the parties agree to submit to the "non-exclusive jurisdiction of any New York State court or Federal court of the United States of

5

America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Note or any of the other Loan Documents to which it is a party ..." (Promissory Note, ¶ 10); and (b) the Stock Purchase Agreement provides, among other things, for arbitration as the exclusive remedy.

Nexxar claims that the new causes of action fall within the purview of the arbitration provision of the Stock Purchase Agreement and should, therefore, be submitted to arbitration.

Motion to Amend the Complaint

It is well settled that leave to amend a complaint should be freely granted absent prejudice to the defendant (see CPLR 3025 (b); see also Liebowitz v Mount Sinai Hosp., 296 AD2d 340 [1st Dept 2002]). In the Complaint, plaintiffs allege that Nexxar acted in bad faith in failing to go forward with the proposed acquisition (Complaint, ¶ 11). Plaintiffs therefore sought a declaration as to both parties' rights and obligations under the Acquisition Agreement. In the Proposed Amended Complaint, plaintiffs seek to add three new causes of action for breach of contract, fraudulent concealment and trademark infringement claims. These claims are based on facts and circumstances which could have caused "neither surprise nor cognizable prejudice" to Nexxar (see Ward v Eastchester Health Care Ctr., LLC, 34 AD3d 247, 248 [1st Dept 2006], citing Zaid Theatre Corp. v Sona Realty Corp., 18 AD3d 352 [1st Dept 2005]). In fact, Nexxar does not contend that it would be prejudiced, but rather simply suggests that the new claims fail to state a cause of action.

Under New York law, the elements of a breach of contact claim are: (1) existence of a contract between the parties; (2) performance by plaintiff; (3) breach by defendant; and (4) damages incurred by plaintiff (Furia v Furia, 116 AD2d 694, 695 [2d Dept 1986]). There is no dispute that

6

the parties formed a contract. Plaintiffs allege that they performed all of their contractual obligations under the Acquisition Agreement, but that it was Nexxar who allegedly breached the agreement by failing to, among other things, obtain necessary funding commitments and/or governmental "change in control" permits, and disclose financial problems or effects they had on Nexxar's shares. Plaintiffs claim that, due to their reliance on Nexxar's representations, plaintiffs suffered damages, including, but not limited to, allowing other business opportunities to pass. This is sufficient to state a cause of action for breach of contract.

The Proposed Amended Complaint sufficiently alleges representations of material fact, falsity, scienter, reliance and injury to state a claim of fraudulent concealment (Small v Lorillard Tobacco Co., 94 NY2d 43, 57 [1999]).

As to the cause of action for contributory infringement under 15 USC § 1114 and 15 USC § 1125, to state a claim, plaintiffs must allege that (1) they had a valid mark subject to protection, and (2) defendant's mark results in a likelihood of confusion among prospective customers as to the source of the goods (see Clinique Laboratories, Inc. v DEP Corp. d/b/a Basique Labs, Inc., 945 F Supp 547, 550 [SD NY 1996]). Federal trademark registration conclusively establishes a plaintiff's ownership of a valid mark (id.). There is no dispute that plaintiffs own the exclusive right to the Trademark. Plaintiffs claim that Nexxar continued to use the Trademark beyond its expiration, which is likely to confuse consumers since both Nexxar and Envios are international money transmittal businesses. The facts as alleged are satisfactory to state a claim for trademark infringement.

Thus, because the Proposed Amended Complaint sufficiently pleads claims for breach of contract, fraudulent concealment and contributory trademark infringement, the motion to amend is

7

granted.

### Cross Motion to Compel Arbitration

Nexxar asserts that the new claims must be submitted to arbitration as agreed to by the parties in the Stock Purchase Agreement. Plaintiffs contend that, upon a review of the parties' contract as a whole, i.e., looking at the entire breadth of the interrelated agreements, there is inconsistency as to the intent to arbitrate, and therefore, arbitration should not be compelled. "[O]n a motion to compel or stay arbitration, the court's role is that of gatekeeper, limited to deciding only three threshold questions: whether the parties made a valid agreement; if so, whether the parties complied with the agreement; and whether the claim sought to be arbitrated is barred by the statute of limitations" (see Cooper v Bruckner, 21 AD3d 758, 759 [1st Dept 2005], citing CPLR 7503, [other citations omitted]). At issue, is whether the claims relating to the Promissory Note fall within the scope of the arbitration clause contained in the Stock Purchase Agreement.

The dispute resolution provision, section 11.8 in the Stock Purchase Agreement, provides, among other things:

> Except (i) for claims for equitable relief and (ii) a party's right to enforce an arbitral award pursuant hereto, the arbitration provisions set forth herein shall be the exclusive remedy in respect of any dispute arising under or connected with this Agreement . . ..

This "arbitration clause is a broad one as it indicates a clear intent by the parties to arbitrate, without any limitation, all issues relating to the [Stock Purchase Agreement], since it provides for arbitration of 'all disputes arising in connection with the [Stock Purchase Agreement]'" (see Matter of Same Time Holdings Ltd. and Red Board Ltd., 12 Misc 3d 1186 (A), 824 NYS2d 766 [NY Sup, NY County 2006], citing PaineWebber Inc. v Bybyk, 81 F3d 1193, 1198 [2d Cir 1996] [other

8

citations omitted]; see also Bayly, Martin & Fay, Inc. v Glaser, 92 AD2d 850 [1st Dept], aff'd 60

NY2d 577 [1983]). "Because of the State policy of giving broad, full effect to arbitration clauses,

. . . the disputes arising under the three agreements should be resolved through the arbitration

procedure provided for by the primary agreement," i.e., the Stock Purchase Agreement (Bayly,

Martin & Fay, Inc.., 92 AD2d at 851, citing Matter of Weinrott [Corp.], 32 NY2d 190, 196 [1973]

[other citations omitted]; see also Blatt v Sochet, 199 AD2d 451 [2d Dept 1993]; Alsy Corp. v

Gindel, 197 AD2d 492 [1st Dept 1993] [the interrelation of employment agreements, certification

of incorporation and termination agreements fell within the ambit of broad arbitration clause of the

termination agreement]). Moreover, "there is no question that there is 'a reasonable relationship

between the subject matter of the dispute and the general subject matter of the underlying

contract[s]'" (Alsy Corp., 197 AD2d at 492-493, quoting Matter of Nationwide Gen. Ins. Co. v

Investors Ins. Co. of Am., 37 NY2d 91, 96 [1975]).

      Similar to this case, in Blatt, there was a conflict between two provisions in a stock purchase

agreement. The first of the two provisions provided that any dispute concerning the sale or

disposition of the stock would be enforceable in a court of equity by a decree of specific performance

(Blatt, 199 AD2d at 452). The other paragraph stated that "[a]ny controversy arising under this

agreement shall be settled by arbitration under the rules then obtaining of the American Arbitration

Association" (id.) Likewise, here, there are two conflicting provisions within the Promissory Note

and the Stock Purchase Agreement. Specifically, the Promissory Note provides for resolution of

disputes in either a state or federal court in New York City, whereas the Stock Purchase Agreement

broadly provides for arbitration with respect to "any dispute arising under or connected with" the

Stock Purchase Agreement. In Blatt, the Second Department held that "[w]here there is a broad

arbitration agreement, the scope of the arbitration clause is determinable by arbitration" and that while the issue concerning Blatt's status as a shareholder was subject to arbitration, the remaining issue did not arise under the agreement which included the arbitration clause. For these reasons, the action was stayed pending arbitration (id.).

While Blatt may be otherwise relevant authority, Nexxar waived its right to arbitration by participating in the instant litigation. A defendant's right to compel arbitration and the right to stay the action does not remain absolute, but may be waived by, for example, interposing a counterclaim, giving notice of trial, or participating in discovery (see Sherrill v Grayco Bldrs., Inc., 64 NY2d 261 [1985]; De Sapio v Kohlmeyer, 35 NY2d 402 [1974] [procuring deposition of plaintiff and interposing a cross claim on apportionment of liability constitutes waiver of any right to arbitration]; Accessory Corp. v Capco Wai Shing, LLC, 39 AD3d 344 [1st Dept 2007] [in dicta, participation in discovery would have constituted an affirmative acceptance of judicial forum]; Stark v Molod Sptiz DeSantis & Stark, P.C., 29 AD3d 481 [1st Dept 2006]; Bucci v McDermott, 156 AD2d 328 [1st Dept 1989] [participation in litigation for one year waives right to arbitration]). "Once the right to arbitrate a particular dispute has been lost by an election to litigate it cannot be recaptured" (Sherrill, 64 NY2d at 274).

Here, Nexxar brought a counterclaim to recover the advanced deposit under the Promissory Note, served discovery requests and sought summary judgment. Nexxar's document demand, dated May 24, 2006, seeks, among other things, "Documents or communications, . . . relating to the Stock Purchase Agreement [and] [a]ny and all documents relating to the allegations in paragraph 10 of the Complaint that "Defendant . . . falsely accused plaintiffs of breaching the SPA." Moreover, Nexxar, in its original summary judgment papers, specifically relied on the Stock Purchase Agreement with

respect to the alleged termination of the agreement and monies due on the Promissory Note. So, too, does plaintiffs' defense to repayment of the Promissory Note relates to Nexxar's alleged failure to comply with its obligations under the Stock Purchase Agreement. Based on Nexxar's active participation in this litigation, as well as its reliance on the Stock Purchase Agreement, Nexxar has waived its right to compel arbitration (see Stark, 29 AD3d at 485-486 [defendants waived contractual right to compel arbitration where they actively participated in a special proceeding and two plenary actions that involved matters falling within the ambit of the arbitration clause]).

Accordingly, Nexxar's cross motion to compel arbitration and stay the proceedings is denied.

Nexxar's Renewed Motion for Summary Judgment

On March 30, 2007, Nexxar filed a renewed motion for summary judgment seeking an order for immediate payment of the $5.5 million allegedly owed on the Promissory note, after I disposed of an order to show cause on the same grounds, dated February 5, 2007. Technically, the motion should have been brought as a motion to renew pursuant to CPLR 2221. On that ground alone this motion should be denied. Nevertheless, I will consider the motion on its merits.

Nexxar claims that analysis of this motion is tantamount to summary judgment in lieu of a complaint under CPLR 3213. Plaintiffs, on the other hand, contend that the motion should be denied because, among other things, there are interrelated agreements, including a promissory note, which are expressly intertwined and signed simultaneously, that must be construed together.

"When an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint" (CPLR 3213, quoted in Weissman v Sinorim Deli, Inc., 88 NY2d 437, 443 [1996]). As with any motion for summary judgment, there must be no genuine

11

issues of material fact. The First Department has held that, under CPLR 3213, a prima facie case is made if the movant proves (1) that the instrument in question, on its face, is an instrument for the payment of money only, and (2) that the non-moving party did not pay the instrument in accordance with the stipulated terms (HSBC Bank USA v IPO, LLC, 290 AD2d 246 [1st Dept 2002]; Seaman-Andwall Corp. v Wright Machine Corp., 31 AD2d 136 [1st Dept 1968], affd 29 NY2d 617 [1971]). If outside proof is necessary to substantiate that it is an instrument for the payment of money only, then the note does not satisfy the requirements of CPLR 3213 (Mike Nasti Sand Co., Inc. v Almar Landscaping Corp., 34 AD2d 554 [2d Dept 1970]).

The terms of the Promissory Note clearly are intertwined with the terms of the Stock Purchase Agreement. Since there are triable issues of fact as to whether Nexxar failed to perform its obligations under the Stock Purchase Agreement, use of accelerated judgment under CPLR 3213 is precluded (see Kerin v Kaufman, 296 AD2d 336 [1st Dept 2002]; Manufacturers Hanover Trust Co. v Hixon, 124 AD2d 488 [1st Dept 1986]; Dresdner Bank AG [New York Branch] v Morse/Diesel, Inc., 115 AD2d 64, 67 [1st Dept 1986]).

Therefore, Nexxar's renewed motion for summary judgment under a CPLR 3213 analysis is denied.

Nexxar further argues that even if CPLR 3213 is unavailable as a procedural remedy, it is entitled to summary judgment pursuant to CPLR 3212, relying on the statement in my previous order, dated January 8, 2007, that "[a]ccepting the Plaintiff's argument as true, the note would not be due until February 3, 2007." However, I went on to state that there were a number of factual issues surrounding plaintiff's claim and that, in short, the issue was inappropriate for summary judgment. In denying Nexxar's summary judgment motion on its counterclaim for breach of the

Promissory Note, I held that there were "a number of factual issues as to how the [Stock Purchase Agreement] was terminated," and by whom that "must be addressed at trial". Those issues are still not resolved. Rather, the Proposed Amended Complaint raises even more questions of fact than initially presented to the court, as set forth above.

Accordingly, Nexxar's motion for summary judgment is denied.

Accordingly, it is

ORDERED that the motion for leave to amend the complaint by plaintiffs Rodger Zepka, Eleno Ramos, Envios RD Corporation and Dominican Communications Corporation (002) is granted, and the amended complaint in the proposed form annexed to the moving papers shall be deemed served upon service of a copy of this order with notice of entry thereof; and it is further

ORDERED that the defendant Nexxar Group, Inc. shall serve an answer to the amended complaint within 20 days from the date of said service; and it is further

ORDERED that defendant Nexxar Group, Inc.'s cross motion to compel arbitration (002) is denied; and it is further

ORDERED that defendant Nexxar Group, Inc.'s motion for summary judgment (004) is denied.

Dated: July 17, 2007

ENTER:

B.

J.S.C.    BERNARD J. FRIED
J.S.C.

FILED

JUL 18 2007

NEW YORK
COUNTY CLERKS OFFICE

13

Index No.: 601770/06

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RODGER ZEPKA, ELENO RAMOS, ENVIOS RD
CORPORATION AND DOMINICAN
COMMUNICATIONS CORPORATION,

Plaintiffs,

v.

NEXXAR GROUP, INC.,

Defendant.

## NOTICE OF ENTRY OF ORDER

**PORZIO, BROMBERG & NEWMAN, P.C.**
156 West 56th Street, Suite 803
New York, New York 10019
(212) 265-6888
Attorneys for Plaintiffs
Rodger Zepka, Eleno Ramos, Envios RD Corporation
and Dominican Communications Corporation

Signature of Attorney Pursuant to Rule 130-1.1a:
*(Print name below signature)*

X _____
Gary M. Fellner

1138608



















**First Class Mail**

## PORZIO
### BROMBERG & NEWMAN P.C.
ATTORNEYS AT LAW

www.pbnlaw.com

TELEPHONE (212)265-6888 • FAX (212)957-3983
156 WEST 56th STREET
NEW YORK, NY 10019-3800

TO:

Stephen Christopher Bowden, Esq.
KIRKLAND & ELLIS, LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RODGER ZEPKA, ELENO RAMOS, ENVIOS RD
CORPORATION AND DOMINICAN
COMMUNICATIONS CORPORATION,

                    Plaintiffs,

        -against-

NEXXAR GROUP, INC.,

                  Defendant.

Index No.: 601770/06

**VERIFIED COMPLAINT**

Plaintiffs Rodger Zepka ("Zepka"), Eleno Ramos ("Ramos"), Envios RD Corporation d/b/a Pronto Envios ("Envios") and Dominican Communications Corporation ("DCC"), by their attorneys Porzio, Bromberg & Newman, P.C., as and for their Complaint against Defendant Nexxar Group, Inc. ("Nexxar" or "Defendant"), allege as follows.

### SUMMARY OF THE ACTION

1.    This action arises from a complex, commercial agreement reached in February 2005 that never materialized as envisioned. The context in which the agreement and instant dispute arise concerns the proposed acquisition of Envios and DCC by Nexxar. Envios and Nexxar are international money transmittal businesses. DCC is a long distance telephone company.

2.    A larger, competing money transmitter business, i.e. Defendant Nexxar, set out to acquire smaller money transmitter and agent businesses, including, as now relevant, Plaintiffs Envios and DCC (the "Corporate Plaintiffs"), to increase Nexxar's rising dominance in the industry. Nexxar is currently roughly twice the Corporate Plaintiffs' size.

1024743

1

3.    Like the best laid plans, the agreement was never consummated, and the central issue Plaintiffs now face is "why." The answer to that pivotal question will determine whether the Corporate Plaintiffs owe Defendant any money for an advance made in February 2005, and, if so, when payment is due.

4.    On February 18, 2005, the parties signed several, inter-related agreements concerning the acquisition. The total purchase price agreed to exceeded $40 million. The acquisition was expected to close, one year later, in or about February 2006.

5.    To that end, the parties signed a Stock Purchase Agreement on February 18, 2005 ("SPA") that designates the various contingencies, conditions, and the parties' obligations concerning both the acquisition's consummation, or cancellation, as applicable. The SPA evidences the purchase price that Defendant would pay to acquire all of the Corporate Plaintiffs' stock. Such shares were and are owned by Plaintiffs Roger Zepka and Eleno Ramos (the "Individual Plaintiffs"). The Corporate Plaintiffs also signed a promissory note, dated February 18, 2005 (the "Note").

6.    The Note was issued in exchange for a $5,500,000 million advance to the Corporate Plaintiffs made on February 18, 2005. As discussed below, the due date of the Note varies, depending upon various contingencies stated in detail in the SPA, including the closing date or, as now applicable, the actual grounds for the acquisition's cancellation.

7.    If the acquisition had closed, the $5,500,000 million advance would not have been repaid it would have become part of the purchase price. On the other hand, if the acquisition terminated because there were "materially adverse changes" to the Corporate Plaintiffs' operations or finances after February 2005, as specified under the SPA, and such adverse changes were Defendant's reason for not proceeding with the acquisition, the $5,500,000 due

under the Note was not to be repaid until February 2007. By contrast, the parties agreed, as also provided in the SPA, that the Note's due date would be May 18, 2006 if Plaintiffs breached the SPA's terms and conditions.

8.     In January 2006, the Corporate Plaintiffs, by their attorneys, notified Defendant that they could not verify the absence of materially adverse changes, but that they nonetheless wanted to proceed with the transaction.

9.     As of this date, Defendant had not raised any allegation that the Corporate Plaintiffs had breached any part of the Note or the SPA.

10.     Defendant then stated, by letters dated January 27, February 6, March 9, and April 17, 2006, that it did not want to proceed, and falsely accused Plaintiffs of breaching the SPA. Upon information and belief, Defendant, in fact, opted not to acquire the Corporate Plaintiffs and proceed under the SPA, as agreed, because of the admitted material adverse changes to the Corporate Plaintiffs.

11.     Thus, upon information and belief, Defendant has falsely asserted, in bad faith, that the Corporate Plaintiffs have breached the SPA in order to accelerate the due date of the Note. Defendant has falsely accused the Corporate Plaintiffs of not satisfying their obligations under the SPA for self-gain, when in truth and fact, the Corporate Plaintiffs have satisfied all obligations in good faith.

12.     Upon information and belief, Defendant is seeking to apply undo pressure upon the Corporate Plaintiffs, which are Defendant's competitors, to prematurely place them in "default" of the Note. Defendant thereby improperly seeks to compel the Corporate Plaintiffs to repay $5,500,000 before the due date of February 2007.

13.     On February 18, 2005, the parties also signed, among the inter-related agreements at issue, security and pledge agreements as collateral for the $5.5 million advance.  In that regard, Plaintiffs request, as necessary, that Defendant be preliminarily enjoined from perfecting or enforcing any security interest in the Corporate Plaintiffs or Individual Plaintiffs assets pending the necessary decree and judgment declaring the parties' rights and obligations.

14.     Any effort by Defendant to enforce the Note's collateral prematurely would cause Plaintiffs irreparable harm.

15.     By reason of the foregoing, there is a ripe and justiciable controversy that exists among the parties as to whether Defendant is owed funds under the Note, if at all, based upon the SPA's terms and conditions, and, if so, when payment is due as stated thereunder.

16.     Plaintiffs thus require declaratory and injunctive relief to declare the parties' rights and obligations and to prevent Defendant from taking any steps that would be inconsistent with its express obligations and implied obligation of good faith and fair dealing under the parties' agreement.

## THE PARTIES

17.     Plaintiff Roger Zepka was and still is the sole shareholder of Envios and a resident of the State of New Jersey, residing at 904 Bailey Court, Westfield, New Jersey 07090.

18..     Plaintiff Eleno Ramos was and still is the sole shareholder of DCC and a resident of the State of New Jersey, residing at 170 Summit Street, Englewood, New Jersey 07631.

19.     Envios was and still is a corporation duly organized under and existing by virtue of the laws of the State of New York and doing business in the County of New York, State of

1024743                                    4

New York, with its office and principal place of business at 2 Bennett Avenue, New York, New York 10033.

20.    DCC was and still is a corporation duly organized under and existing by virtue of the laws of the State of New York and doing business in the County of New York, State of New York, with its office and principal place of business at 2 Bennett Avenue, New York, New York 10033.

21.    Upon information and belief, Nexxar was and still is a corporation duly organized under and existing by virtue of the laws of the State of Delaware and doing business in the County of New York, State of New York, with its office and principal place of business at 140 East Ridgewood Avenue, Paramus, New Jersey 07652.

## ALLEGATIONS COMMON TO BOTH CAUSES OF ACTION

### Background

22.    Zepka and Ramos formed the Corporate Plaintiffs in New York in 1993. The Corporate Plaintiff, Envios, operates via two types of money service business ("MSB") models: (i) through Independent Agents, who forward money transfer transactions to Envios, and (ii) through direct Envios owned or operated stores. Both types of establishments use the trademark "Pronto Envios" which is registered to Envios. DCC is a telecommunications company operating multi-service storefront services in ethnic communities.

23.    Envios and DCC combined have over 135 employees, operate in a total of 30 states and forward transactions to Corresponding Agents in 39 countries.

24.    Nexxar is a global MSB founded in 2003 which, upon information and belief, also conducts bill-pay, check-cashing, and money-order services. Nexxar's business model is to

1024743                                          5

purchase smaller MSBs and roll them into their "family." To date, Nexxar has purchased the following MSBs with international presences: Universal (Spain) Giromex, Inc. (located in California and conducting Mexican transactions), Li's (located in California and conducting Korean transactions), UNO (located in Florida and conducting Brazilian transactions), Welfin (located in Italy) and BHD (located in New York and conducting transactions in the Dominican Republic). Upon information and belief, Nexxar has targeted unbanked, ethnic populations through the consolidation of niche ethnic corridor MSBs.

25. Frank Angrisani ("Angrisani") was the CEO of Nexxar during the period of negotiation and finalization of the agreement between the parties. Upon information and belief, Angrisani is no longer employed by or affiliated with Nexxar, having been terminated in or about November, 2005.

**The Agreement**

26. In or about August and September of 2004, Zepka and Ramos attended numerous meetings with Nexxar and ultimately reached an understanding whereby Defendant would purchase Envios and DCC and roll it into its "family" of MSBs. The agreement was primarily reached with Agrisani at Nexxar and Zepka and Ramos on behalf of the Corporate Plaintiffs.

27. On February 18, 2005, to effectuate the agreed upon sale of the Corporate Plaintiffs, the Individual Plaintiffs and Nexxar executed the SPA.

28. On February 18, 2005, Nexxar advanced the Corporate Plaintiffs the sum of $5,500,000 in return for "locking-up" the Corporate Plaintiffs through August 2005 and in return for the Corporate Plaintiffs' execution of the Note. To secure the Note, the Corporate Plaintiffs

granted Defendant a security interest in all of the Companies' assets by way of a security agreement (the "Security Agreement").

29.    The terms of the SPA were integrated into, and made a part of, the Note as evidenced in several inter-related sections of the Note, including Sections 1 (Payment), 2 (Interest), 8 (Events of Default), 12 (Costs and Expenses), and 13 (Right of Set-off). Likewise, the Note was integrated into the terms of the SPA through Section 11.5 of the SPA.

30.    If the SPA were to be consummated as planned, the $5,500,000 due under the Note would be forgiven, thus bringing the total consideration to be paid by Nexxar to Plaintiffs to $42 million.[1]

**Closing Date**

31.    Pursuant to Section 3 of the SPA, the closing of the transaction was to occur "on the second business day after conditions set forth in Sections 7 and 8 have been fulfilled (or such other date as the parties may agree)."

32.    However, in the event that the transaction did not close, Section 10 of the SPA provides for termination as follows:

(a)    by the written consent of Purchaser and Sellers;

(b)    by Purchaser or Sellers if the Closing Date shall not have occurred on or before February 10, 2006;

(c)    by Sellers if the condition set forth in Section 7.6(a) has not been met and Purchaser refuses to close based solely on that condition, provided that Sellers give Purchaser written notice of termination pursuant to this paragraph no later than thirty (30) days after such refusal to close.

* * *

---

[1] In addition, pursuant to Section 9.8(b) of the SPA, the Individual Plaintiffs pledged a certification of deposit in the amount of $500,000 to the New York State Banking Department. Upon the closing under the SPA, the CD was to be returned to the Individual Plaintiffs.

(h)     by Purchaser if the conditions in Section 7.14 have not been satisfied.

33.     In turn, the terms for repayment of the Note flow from the grounds for termination of the SPA. Thus, Section 1 of the Note directly integrates the provisions of the SPA by providing that it is to be repaid on the following terms and conditions:  _

(a)     120 days after notice by Purchaser of termination of the Stock Purchase Agreement pursuant to Section 10.1(e) thereof, if such notice is based on a willful breach by Sellers of any of their representations, covenants or warranties in Section 4 or Section 6 thereof; or

(b)     upon termination of the Stock Purchase Agreement pursuant to Section 10.1(d) thereof; or

(c)     provided neither (a) or (b) has occurred, then on the latest to occur of the following –

(i)     May 18, 2006;

(ii)     The first anniversary of the date that Sellers give notice of termination of the Stock Purchase Agreement pursuant to Section 10.1(c) thereof;

(iii)     The first anniversary of the date that Lender gives notice of termination of the Stock Purchase Agreement pursuant to Section 10.1(e) thereof, if such notices is based on a non-willful breach by Sellers of any of their representations, covenants or warranties in Section 5 thereof; or

(iv)     the first anniversary of the date that Lender gives notice of termination of the Stock Purchase Agreement pursuant to Section 10.1(h) thereof.

33.     Finally, as referenced in Section 10(c) above, Section 7.6(a) of the SPA states that:

There shall have been no state of facts, change, development, effect, condition or occurrence which individually or together with any other state of facts, change development, effect condition or occurrence, has a Material Adverse Effect with respect to the Companies.

### The Failure to Close

34.    On January 9, 2006, Plaintiffs, through counsel, demanded that the closing take place on or before February 1, 2006. Plaintiffs also stated:

> In addition to the foregoing, Sellers hereby acknowledge that under Section 7.6(a), Sellers cannot represent that no Material Adverse Effect has occurred with respect to the Companies. In particular, the Companies did not meet forecasted projections of transaction numbers.

35.    In response, by letter dated January 27, 2006 Nexxar denied that it had breached the terms of the SPA, and further alleged:

> Nexxar Group, Inc. declines at this time to close the transactions contemplated by the Agreement because the Sellers thereunder have not yet satisfied material closing conditions, including without limitation the conditions in Section 7.14 of the Agreement; as to Section 7.14 we note that Nexxar Group, Inc. has waived and for the time being continues to waive the deadlines stated therein.

36.    On February 3, 2006, Plaintiffs responded stating that:

> Sellers deny that that (sic) they have not met the conditions of 7.14 and represent that they have taken all required steps under that provision....your client is well aware of this... The only viable grounds for Nexxar's failure to close the transaction is Seller's admission that it cannot represent that it has not suffered a Material Adverse Effect under Section 7.6. As a result of this failure, Seller hereby terminates the Agreement.

37.    On February 6, 2006, Nexxar again denied that Plaintiffs had met the requirements of Section 7.14

> The Sellers have not satisfied material closing conditions under the Stock Purchase Agreement, including , among other others the condition in Section 7.14 of the Agreement. Nexxar does not see any basis at all for the Sellers to contend that they have satisfied the requirements of Section 7.14.

38.     Then, for the first time and contrary to their previous assertions, in correspondence dated March 9, 2006, Nexxar raised Section 10(1)(b) as grounds for termination of the SPA, and confirmed that SPA was no longer in effect.

39.     On March 9, 2006, in response to Nexxar's correspondence, Plaintiffs reiterated:

> In accordance with my letters dated January 27, 2006 and February 3, 2006, it remains Pronto's position that the Agreement was previously terminated pursuant to Section 10.1(c).

40.     On April 17, 2006, Nexxar stated that:

> We understand from prior communications from your firm that the Borrowers contend that the Note's due date for payment is later than May 18, 2006. In particular, the Borrowers argue for a later due date linked to the anniversary of the putative invocation of Section 10.1(c) of the Stock Purchase Agreement. But Section 10.1(c) of the Stock Purchase Agreement can only be triggered when the Seller (Nexxar) "refuses to close based solely on that condition" set forth in Section 7.6(a) of the Stock Purchase Agreement. Accordingly, the Borrowers' argument is faulty – Nexxar never refused to close based solely on the condition set forth in Section 7.6(a) of the Stock Purchase Agreement (the "Material Adverse Effect" provision).

> In short, the monies are due no later than May 18, 2006.

41.     Thus, Defendant is demanding that the Note be repaid "no later than May 18, 2006."

42.     The money is not currently due, if at all.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

43.     Plaintiffs repeat and reallege each and every allegations set forth above as if set forth herein at length.

44.     As a result of the foregoing, Plaintiffs request a declaration of the parties' rights and obligations due and owing to each other under their agreement.

1024743                                    10

45.    There is an actual, ripe, and justiciable controversy among the parties by reason of the parties' agreement and Defendant's demand that the Corporate Plaintiffs repay the Note prematurely.

46.    In the event Defendant seeks to prematurely enforce the Note through its collateral or otherwise, Plaintiffs will be damaged and suffer irreparable harm.

47.    Plaintiffs have no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Injunction)

48.    Plaintiffs repeat and reallege each and every allegations set forth above as if set forth herein at length.

49.    As a result of the foregoing, Plaintiffs request temporary, preliminary and/or permanent injunctive relief to maintain the status quo and prevent any irreparable damage to Plaintiffs.

50.    In equity and good conscience, Defendant should be so enjoined.

51.    Plaintiffs have no adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Reimbursement of Funds)

52.    Plaintiffs repeat and reallege each and every allegations set forth above as if set forth herein at length.

53.    In an agreement related to the SPA, Envios retained a certain employee for the benefit of Nexxar. In consideration of the retention of this employee, Nexxar agreed to equally share the costs of the employee with the Corporate Plaintiffs.

1024743

11

54.    Nexxar has not reimbursed the Corporate Plaintiffs for their 50% share of said costs in the amount of $48,762.23.

**WHEREFORE**, Plaintiffs demand judgment as follows:

(a) A declaration by the Court that, pursuant to the parties' Stock Purchase Agreement and Note, dated September 18, 2005, Defendant is not due any monies prior to February 2007, if at all;

(b) Plaintiffs further claim and demand, as consequential relief, that Defendant be enjoined from enforcing the Note, prior to the above declarations being decreed, and granting Plaintiffs all temporary, preliminary and permanent injunctive relief against Defendant as needed to prevent irreparable harm to Plaintiffs as justice so warrants;

(c) Awarding the Corporate Plaintiffs judgment in the amount of $48,762.23;

(d) Awarding Plaintiffs all costs, disbursements, fees, and interest as authorized by the New York Civil Practice Law and Rules; and

(e) Granting Plaintiffs such other and further relief as deemed just, proper and equitable.

Dated: New York, New York
       May 17, 2006

                                        PORZIO BROMBERG & NEWMAN, P.C.

                                        By _____
                                              Gary M. Fellner

                                        *Attorneys for Plaintiffs Rodger Zepka, Eleno*
                                        *Ramos, Envios RD Corporation and Dominican*
                                        *Communications Corporation*

                                        156 West 56th Street
                                        New York, New York 10019
                                        (212) 265-6888

**VERIFICATION**

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF NEW YORK    )

ROGER ZEPKA,, being duly sworn, deposes and says:

I am the president and shareholder of Plaintiff Envios RD Corporation, and am authorized to sign this verification on behalf of all plaintiffs herein.

I have read the contents of the foregoing annexed complaint and know the contents thereof. The same is true to my own knowledge and belief, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

ROGER ZEPKA

SWORN TO BEFORE ME
THIS 27th DAY OF MAY 2006

NOTARY PUBLIC

ESTEE MICHAELSON
Commissioner of Deeds
City of New York, No. 2-12149
Certificate Filed in New York County
Commission Expires

1024743                                        13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| RODGER ZEPKA, ELENO RAMOS, ENVIOS RD CORPORATION AND DOMINICAN COMMUNICATIONS CORPORATION, <br><br> Plaintiffs, <br><br> -against- <br><br> NEXXAR GROUP, INC., <br><br> Defendant. | Index No. : 601770/06 <br><br> Date purchased <br><br> COUNTY OF NEW YORK as the place of trial <br><br> The basis of the venue is <br> Principal Place of Business of Defendant(s) <br><br> **SUMMONS** |

To the above named Defendant(s)

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:    May 17, 2006

PORZIO, BROMBERG & NEWMAN, P.C.

By:

Gary M. Fellner
*Attorneys for Plaintiffs*
*Rodger Zepka, Eleno Ramos, Envios RD*
*Corporation and Dominican*
*Communications Corporation*

156 West 56th Street, Suite 803
New York, NY 10019-3800
(212) 265-6888

NEXXAR GROUP, INC.
140 East Ridgewood Avenue
Paramus, New Jersey 07652

1025823

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RODGER ZEPKA, ELENO RAMOS, ENVIOS RD
CORPORATION AND DOMINICAN
COMMUNICATIONS CORPORATION,

                            Plaintiffs,

        -against-

NEXXAR GROUP, INC.,

                       Defendant.

Index No.: 601770/06

**VERIFIED ANSWER,
AFFIRMATIVE
DEFENSES, AND
COUNTERCLAIM**

      Defendant Nexxar Group, Inc. ("Nexxar"), through its attorneys, for its Verified Answer to the Complaint of the Plaintiffs, states as follows:

      1.      Denies the allegations in paragraph 1 of the Complaint, except (i) admits that the dispute relates to, among other things, a Promissory Note entered into between the parties on February 18, 2005; (ii) admits on information and belief that Envios is an international money transmittal business; and (iii) denies that it has knowledge sufficient to admit or deny whether DCC is a long distance telephone company.

      2.      Denies the allegations in paragraph 2 of the Complaint, except (i) admits that Nexxar is a holding company that from time to time acquires money transmittal businesses; and (ii) denies that it has knowledge sufficient to admit or deny the size of the Plaintiffs.

      3.      Denies the allegations in paragraph 3 of the Complaint.

      4.      Denies the allegations in paragraph 4 of the Complaint, except admits that Nexxar entered into a Stock Purchase Agreement ("SPA"), a Promissory Note, a Guarantee and Pledge Agreement, and a Security Agreement with certain of the Plaintiffs on February 18, 2005, and respectfully refers the Court to those agreements for their true and complete terms.

5.     Denies the allegations in paragraph 5 of the Complaint, except admits that the parties entered into the SPA, that the Plaintiffs signed the Promissory Note, and respectfully refers the Court to the SPA and the Promissory Note for their true and complete terms.

6.     Denies the allegations in paragraph 6 of the Complaint, except admits that Nexxar delivered $5,500,000 to the Plaintiffs, which has not been repaid, and respectfully refers the Court to the SPA and the Promissory Note for their true and complete terms.

7.     Denies the allegations in paragraph 7 of the Complaint, except admits that Nexxar delivered $5,500,000 to the Plaintiffs, which has not been repaid, and respectfully refers the Court to the SPA and the Promissory Note for their true and complete terms.

8.     Admits the allegations in paragraph 8 of the Complaint.

9.     Denies the allegations in paragraph 9 of the Complaint.

10.     Denies the allegations in paragraph 10 of the Complaint, except admits that it corresponded with certain of the Plaintiffs on January 27, February 6, March 9, and April 17, 2006, and respectfully refers the Court to those communications for their true and correct terms.

11.     Denies the allegations in paragraph 11 of the Complaint.

12.     Denies the allegations in paragraph 12 of the Complaint.

13.     Denies the allegations in paragraph 13 of the Complaint, except admits that certain of the parties entered into a Security and a Guarantee and Pledge Agreement and respectfully refers the Court to those agreements for their true and complete terms.

14.     Denies the allegations in paragraph 14 of the Complaint.

15.     Denies that there is any legitimate dispute concerning the parties' respective rights under the Promissory Note and SPA including, *inter alia*, whether the note must be satisfied, but admits that Plaintiffs claim that it is due in February of 2007 rather than on May 18, 2006.

2

16.     Denies the allegations in paragraph 16 of the Complaint, except admits that Plaintiffs have requested declaratory and injunctive relief.

## THE PARTIES

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.     Admits the allegations in paragraph 21 of the Complaint.

## ALLEGATIONS COMMON TO BOTH CAUSES OF ACTION

**Background**

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24.     Denies the allegations in paragraph 24 of the Complaint, except admits that Nexxar is a holding company that from time to time acquires money services businesses and admits that Nexxar has acquired money services businesses with trade names substantially similar to the trade names of the entities listed in paragraph 24 of the Complaint.

3

25.     Admits the allegations in the first sentence of paragraph 25 of the Complaint. Denies the allegations in the second sentence of paragraph 25, except admits that Angrisani is no longer employed by Nexxar.

**The Agreement**

26.     Denies the allegations in paragraph 26 of the Complaint, except admits that Zepka and Ramos attended meetings with Nexxar and that the parties ultimately entered into the SPA.

27.     Denies the allegations in paragraph 27, except admits that the parties entered into the SPA on or about February 18, 2005, and respectfully refers the Court to the SPA for its true and complete terms.

28.     Denies the allegations in paragraph 28, except admits that Nexxar loaned the Corporate Plaintiffs the sum of $5,500,000 and obtained a security interest in all of the Corporate Plaintiffs' assets by way of a Security Agreement, and respectfully refers the Court to the Security Agreement for its true and complete terms.

29.     Denies the allegations in paragraph 29, except admits that the Promissory Note references certain sections of the SPA, and *vice versa*.

30.     Denies the allegations in paragraph 30, except admits that Section 1 of the Promissory Note says, in part, "[i]f no Event of Default shall have occurred and be continuing, then the outstanding principal balance of this Note shall be forgiven and released and the Note shall be treated for all purposes as paid in full, upon the Closing as defined in the Stock Purchase Agreement."

**Closing Date**

31.     Admits that paragraph 31's quotation of a portion of Section 3 of the SPA is substantially accurate.

4

32.    Admits that paragraph 32's quotation of a portion of Section 10 of the SPA is substantially accurate.

33.    Denies the allegations in the first paragraph 33 of the Complaint, except admits that Section 1 of the Promissory Note references the SPA and respectfully refers the Court to a copy of the Promissory Note and the SPA for their true and correct terms.

33.    Admits that the second paragraph 33's quotation of section 7.6(a) is substantially accurate.

34.    Admits that Plaintiff's counsel sent a letter on January 9, 2006, and that the quotation of that correspondence in paragraph 34 is substantially accurate.

35.    Admits that Nexxar sent a letter on January 27, 2006 and that the quotation of that correspondence in paragraph 35 is substantially accurate.

36.    Admits that Plaintiff's counsel sent a letter on February 3, 2006, and that the quotation of that correspondence in paragraph 36 is substantially accurate.

37.    Admits that Nexxar sent a letter on February 6, 2006 and that the quotation of that correspondence in paragraph 35 is substantially accurate.

38.    Denies the allegations in paragraph 38, and respectfully refers the Court to the March 9, 2006 correspondence for its true and complete content.

39.    Admits that Nexxar sent a letter on March 9, 2006, and that the quotation of that correspondence in paragraph 39 is substantially accurate.

40.    Admits that Plaintiff's counsel sent a letter on April 17, 2006, and that the quotation of that correspondence in paragraph 40 is substantially accurate.

41.    Admits the allegations in paragraph 41.

42.    Denies the allegation in paragraph 42.

5

## AS AND FOR A FIRST CAUSE OF ACTION

43.    Restates and incorporates herein by reference its responses to Paragraphs 1-42 set forth above, as though fully set forth here.

44.    Admits that Plaintiffs seek declaratory relief.

45.    Denies that there is any legitimate dispute concerning the parties' respective rights under the Promissory Note and SPA, but admits that Plaintiffs contend that it is due in February of 2007 rather than on May 18, 2006.

46.    With respect to the allegations in paragraph 46 of the Complaint, asserts that they constitute legal conclusions to which no response is required, but if a response is required denies the allegations thereof.

47.    With respect to the allegations in paragraph 47 of the Complaint, asserts that they constitute legal conclusions to which no response is required, but if a response is required denies the allegations thereof.

## AS AND FOR A SECOND CAUSE OF ACTION

48.    Restates and incorporates herein by reference its responses to Paragraphs 1-47 set forth above, as though fully set forth here.

49.    Admits that Plaintiffs seek the relief described in paragraph 49.

50.    With respect to the allegations in paragraph 50 of the Complaint, asserts that they constitute legal conclusions to which no response is required, but if a response is required denies the allegations thereof.

51.    With respect to the allegations in paragraph 51 of the Complaint, asserts that they constitute legal conclusions to which no response is required, but if a response is required denies the allegations thereof.

6

## AS AND FOR A THIRD CAUSE OF ACTION

52.     Restates and incorporates herein by reference its responses to Paragraphs 1-51 set forth above, as though fully set forth here.

53.     Denies the allegations in paragraph 53 of the Complaint.

54.     Denies the allegations in paragraph 54 of the Complaint.

## AFFIRMATIVE DEFENSES

55.     Plaintiff's causes of action are barred by the doctrine of unclean hands.

56.     Plaintiff's causes of action are barred by the doctrine of estoppel.

57.     The Complaint fails to state a cause of action.

## COUNTER-CLAIMS AGAINST ROGER ZEPKA, ELENO RAMOS, ENVIOS RD CORPORATION AND DOMINICAN COMMUNICATIONS CORPORATION

## NATURE OF THE DISPUTE

58.     This is an action for breach of payment obligations under a Promissory Note dated February 18, 2003 (the "Promissory Note") relating to a loan in the principal amount of $5,500,000 and a Stock Purchase Agreement (the "SPA"). According to the explicit terms of the Promissory Note, Envios RD Corporations ("Envios") and Dominican Communications Corporation ("DCC") (collectively the "Corporate Plaintiffs") were obligated to pay the outstanding principal on the Promissory Note, in the amount of $5,500,000 on May 18, 2006. Corporate Plaintiffs have refused to pay the amount owing. Nexxar thus brings this action to collect the principal due under the Promissory Note as well as the interest and attorney fees due and owning under the Promissory Note.

7

## FACTS COMMON TO ALL CAUSES OF ACTION

### The Agreement

59.    On February 18, 2005, the parties entered into the SPA under which Nexxar could purchase all of the outstanding stock in the Corporate Plaintiffs if certain conditions were met.

60.    At or around this date, Nexxar loaned the Corporate Plaintiffs $5,500,000. To ensure this loan was repaid, Nexxar demanded that the Corporate Plaintiffs execute a Promissory Note in which they promised to repay the $5,500,000. It also insisted that the Corporate Plaintiffs entered into a Security Agreement under which the Corporate Plaintiffs agreed to provide Nexxar with a security interest in all of their personal property. Finally, Nexxar also insisted that Roger Zepka and Eleno Ramos enter into a Guarantee and Pledge Agreement guaranteeing the obligations under the Promissory Note.

61.    Section 1 of the Promissory Note spelled out the terms under which the loan would be repaid. First, it provided that the Corporate Plaintiffs were obligated to repay the $5,500,000 loan. Second, Section 1 also contemplated that this payment would be due (a) 120 days after any notice of termination of the SPA pursuant to § 10.1(e) if such notice was based on a willful breach; or (b) immediately if the Corporate Plaintiffs exercised their rights to sell the stock to a third party other than Nexxar. Alternatively, if neither (a) or (b) occurred, Section 1 contemplated that the payment would be due after the latest of the following (i) May 18, 2006; (ii) the first anniversary after certain of the plaintiffs gave notice of termination pursuant to Section 10(c)(1); (iii) the first anniversary of the date the Nexxar gave notice of termination pursuant to Section 10.1(e) if such notice was based on a non-willful breach by Sellers; or (iv) the first anniversary of the date that Nexxar gave notice of termination of the Stock Purchase Agreement pursuant to Section 10.1(h). Accordingly, unless the parties appropriately exercised

8

their rights to give notice of termination pursuant to Sections 10(c)-(e), or Section 10(h), the payment was due and owing on May 18, 2006.

62.     Pursuant to Section 2 of the Promissory Note, the Corporate Plaintiffs also agreed to pay interest on the unpaid principal at a rate of 6% per annum. In the Event of Default (which includes a failure to pay any principal or interest when that sum is due and owing), the interest is increased to a rate of 10% per annum.

63.     Finally, the Corporate Plaintiffs also agreed in Section 12 to pay on demand all costs and expenses of Nexxar's, including without limitation, the fees of its counsel.

**Plaintiffs Failure to Fulfill Its Payment Obligations**

64.     As events transpired, the parties never closed the SPA and thus Nexxar never purchased the stock of the Corporate Plaintiffs.

65.     After Plaintiffs' counsel demanded that the closing take place in January of 2006, Nexxar said in a January 27, 2006 letter that it would not close because the Seller had not satisfied closing conditions, "including without limitation the conditions set forth in 7.14 of the Agreement." Still, Nexxar agreed to waive the deadlines set forth in Section 7.14 and permitted the Plaintiffs more time to fulfill the various closing conditions in the agreement.

66.     Instead of attempting to fulfill the conditions, Plaintiffs' counsel alleged (without support) that it had fulfilled the conditions set forth under Section 7.14. Plaintiff also purported to give notice of termination under Section 10.1(c) of the agreement. This termination, however, was not effective. Section 10.1(c) allows the Plaintiffs to terminate if a Material Adverse Event ("MAE") had occurred and Nexxar "refuses to close solely on that condition." Here, although the Plaintiffs admitted that an MAE had occurred, the Defendants did not refuse to close for that reason alone. Put simply, the Plaintiffs' failure to fulfill various closing conditions (including

those set forth in Section 7.14 of the agreement) gave Nexxar multiple reasons to decline to close the agreement.

67.    Finally, after the Plaintiffs continued to fail to fulfill the SPA's closing conditions, on March 9, 2006, Nexxar terminated the agreement pursuant to Section 10(1)(b), which permitted any party to terminate the SPA if the deal did not close before February 2006.

68.    Because the SPA was terminated pursuant to Section 10(1)(b) of the SPA *(and not pursuant to Section 10(1)(c)-(e) or Section 10(1)(h) of the SPA),* the principal under the Promissory Note was due and owing on May 18, 2006. Despite repeated demands, however, Plaintiffs have refused to pay the amounts due and owing.

## CAUSE OF ACTION

69.    Nexxar repeats and realleges each and every allegation set forth in paragraphs 58 - 68 as if set forth herein at length.

70.    The Promissory Note constitutes a binding and enforceable contract between Nexxar and Plaintiffs.

71.    Plaintiffs have breached the Promissory Note by failing to perform its obligations as set forth in the Promissory Note. Among other things, Plaintiff failed to honor the payment terms in the Promissory Note.

72.    Plaintiff's breach was material and fundamental.

73.    As a direct and proximate result of Plaintiff's breaches, Nexxar suffered substantial harm, for which it seeks money damages, including attorney fees.

74.    The Plaintiffs have breached their payment obligations under the Promissory Note.

## PRAYER FOR RELIEF

WHEREFORE, Nexxar demands as follows:

(a)     Judgment in its favor and against Plaintiffs;

(b)     Damages in an amount to be determined at trial, but not less than $5,500,000;

(c)     Pre-judgment interest as allowed by law;

(d)     Post-judgment interest as allowed by law;

(e)     Attorneys' fees and costs of court; and

(f)     Such other, further and different relief as this Court may deem just and proper.

Dated:  New York, New York
        May 24, 2006

                                    By:  _____
                                         Robert H. Pees
                                         James d'Auguste
                                         Charles D. Riely
                                         Akin Gump Strauss Hauer & Feld LLP
                                         590 Madison Avenue
                                         New York, NY 10022
                                         (212) 872-1072

                                    *Attorneys for Defendant Nexxar Group Inc.*

11

## VERIFICATION

STATE OF NEW YORK )
                ) ss.:
COUNTY OF NEW YORK )

        Robert H. Pees, being duly sworn, deposes and says:

        I am a member of the firm of Akin Gump Strauss Hauer & Feld LLP,

attorneys for Defendant. I have read the foregoing Verified Answer, Affirmative

Defenses and Counterclaim (the "Answer") and know the contents thereof. The Answer

is true to my own knowledge except as to the matters herein stated to be upon information

and belief and as to those matters I believe them to be true. The basis for my knowledge

is information supplied by the client after reviewing the file relating to this matter. This

verification is made by me and not by the Defendant because Defendant is not in the

county in which the firm of Akin Gump Strauss Hauer & Feld LLP maintains its offices

and in which this action is pending.

Dated: New York, New York
       May 24, 2006

                                    Robert H. Pees

Sworn to before me this
24ᵗʰ day of May, 2006

        Notary Public

MICHELLE B. JOSEPH
Notary Public, State Of New York
No. 01-JO6069834
Qualified In New York County
Commission Expires 2/11/20 7D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

RODGER ZEPKA, ELENO RAMOS, ENVIOS RD
CORPORATION AND DOMINICAN
COMMUNICATIONS CORPORATION,

Index No.: 601770/06

                        Plaintiffs,

        -against-

NEXXAR GROUP, INC.,

                    Defendant.

**REPLY TO COUNTERCLAIM**

---

Plaintiffs Rodger Zepka, Eleno Ramos, Envios Rd Corporation and Dominican Communications Corporation (collectively referred to as "Plaintiffs/Counterclaim Defendants"), by way of Reply to the Counterclaims of Defendant Nexxar Group, Inc., allege as follows:

## NATURE OF THE DISPUTE

1.    Plaintiffs/Counterclaim Defendants deny the allegations contained in paragraph 58 of the Answer with Counterclaim, and to the extent they are based upon documents, refer the trier of fact to the terms and conditions as authorized by law regarding such documents' terms and conditions.

## FACTS COMMON TO ALL COUNTS

### The Agreement

2.    Plaintiffs/Counterclaim Defendants admit the allegations contained in paragraph 59 of the Answer with Counterclaim, and to the extent they are based upon documents, refer the trier of fact to the terms and conditions as authorized by law regarding such documents' terms and conditions.

3.    Plaintiffs/Counterclaim Defendants admit the allegations contained in paragraph 60 of the Answer with Counterclaim, and to the extent they are based upon documents, refer the

trier of fact to the terms and conditions as authorized by law regarding such documents' terms and conditions.

    4.    Plaintiffs/Counterclaim Defendants neither admit nor deny the allegations contained in paragraph 61 of the Answer with Counterclaim but respectfully refer to the Promissory Note and the Agreement for their contents.

    5.    Plaintiffs/Counterclaim Defendants neither admit nor deny the allegations contained in paragraph 62 of the Answer with Counterclaim but respectfully refer to the Promissory Note for its contents.

    6.    Plaintiffs/Counterclaim Defendants neither admit nor deny the allegations contained in paragraph 63 of the Answer with Counterclaim but respectfully refer to the Promissory Note for its contents.

**Plaintiffs Failure to Fulfill Its Payment Obligations**

    7.    Plaintiffs/Counterclaim Defendants admit the allegations contained in paragraph 64 of the Answer with Counterclaim.

    8.    Plaintiff/Counterclaim Defendant admits that it demanded that the closing take place in 2006, but neither admit nor deny the allegations contained in paragraph 65 of the Answer with Counterclaim but respectfully refer to Nexxar's January 27, 2006 letter for its contents.

    9.    Plaintiffs/Counterclaim Defendants admits that their counsel alleged fulfillment of the conditions of Section 7.14 of the Agreement, and deny all remaining allegations contained in paragraph 66 of the Answer with Counterclaim.

    10.    Plaintiffs/Counterclaim Defendants deny the allegations contained in paragraph 67 of the Answer with Counterclaim.

1029547                                    2

11.     Plaintiffs/Counterclaim Defendants deny the allegations contained in paragraph 68 of the Answer with Counterclaim.

## CAUSE OF ACTION

12.     Plaintiffs/Counterclaim Defendants repeat and reallege each and every response to each and every allegation in paragraphs 1 – 11 as if set forth herein at length in response to paragraph 69 of the Answer with Counterclaims.

13.     Plaintiffs/Counterclaim Defendants neither admit nor deny the allegations contained in paragraph 70 of the Answer with Counterclaim, as they are conclusions of law, and in any case denied.

14.     Plaintiffs/Counterclaim Defendants deny the allegations contained in paragraph 71 of the Answer with Counterclaim.

15.     Plaintiffs/Counterclaim Defendants deny the allegations contained in paragraph 72 of the Answer with Counterclaim.

16.     Plaintiff/Counterclaim Defendants deny the allegations in contained in paragraph 73 of the Answer with Counterclaim.

17.     Plaintiffs/Counterclaim Defendants deny the allegations in contained in paragraph 74 of the Answer with Counterclaim.

## SEPARATE DEFENSES

### First Separate Defense

18.     The Counterclaims fail to state a claim against Plaintiffs/Counterclaim Defendants upon which relief can be granted.

### Second Separate Defense

19.    Nexxar's claims are barred in whole or in part by the doctrines of waiver, estoppel and/or release.

### Third Separate Defense

20.    Nexxar's claims are barred in whole or in part by their own misconduct.

### Fourth Separate Defense

21.    Nexxar's claims are barred in whole or in part because they failed to perform their contractual obligations in good faith and as agreed.

### Fifth Separate Defense

22.    Nexxar is not entitled to attorneys' fees, costs or expenses due to its breaches of the parties' agreements.

### Sixth Separate Defense

23.    Nexxar's claims are subject to setoff, offset, and/or recoupment.

### Seventh Separate Defense

24.    Nexxar breached the implied covenant of good faith and fair dealing contained in all contracts.

### Eighth Separate Defense

25.    The relief sought by Defendants/Counterclaimants is barred by their own breach of contract.

**WHEREFORE,** Plaintiffs/Counterclaim Defendants demand judgment that the

Counterclaims be dismissed, together with costs and disbursements of this action.

Dated: New York, New York
      June 13, 2006

                  PORZIO, BROMBERG & NEWMAN, P.C.

                  By
                        Gary M. Fellner

                  156 West 56th Street, Suite 803
                  New York, New York  10019-3800
                  (212) 265-6888
                  *Attorneys for Plaintiffs/Counterclaim Defendants*
                  *Rodger Zepka, Eleno Ramos, Envios Rd*
                  *Corporation and Dominican Communications*
                  *Corporation*

## VERIFICATION

STATE OF NEW YORK    )
                      )    ss.:
COUNTY OF NEW YORK  )

Rodger Zepka, being duly sworn, deposes and says:

I am a plaintiff in the within action and officer of Envios RD Corporation, and am authorized to sign this verification on behalf of all plaintiffs.

I have read the contents of the foregoing annexed reply to counterclaims and know the contents thereof. The same is true to my own knowledge and belief except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                    RODGER ZEPKA

Sworn to before me this
15 day of June 2006

Notary Public

EMIL MANFREDONIA
Notary Public, State of New York
No.1-01MA250470S Qualified in N.Y. County
Certificate filed in New York County
Commission Expires October 14, 2009

1029547                                    6